does not contain all the information known to me concerning this investigation, but contains only facts necessary to establish probable cause for the instant request.

## DEFINITIONS

5.      Title 14 ("Aeronautics and Space"), Code of Federal Regulations, Section 1.1 defines the following terms used in this affidavit:

a.   "Aircraft" means a device that is used or intended to be used for flight in the air.

b.   "Unmanned aircraft" means an aircraft operated without the possibility of direct human intervention from within or on the aircraft.

c.   "Small unmanned aircraft" means an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft.

d.   "Small Unmanned Aircraft System" (small UAS) means a small unmanned aircraft and its associated elements (including communication links and the components that control the small unmanned aircraft) that are required for the safe and efficient operation of the small unmanned aircraft in the national airspace system.

## BACKGROUND AND APPLICABLE LAW

6.      The Federal Aviation Administration (FAA) is an agency within the United States Department of Transportation responsible for the control and use of navigable airspace within the United States. The FAA created the National Airspace System (NAS) to protect persons and property on the ground, and to establish a safe and efficient airspace for civil, commercial, and military aviation. In the FAA Modernization and Reform Act of 2012, the FAA was charged with safely integrating UAS, commonly referred to as "drones," into the NAS.

2

7. The FAA offers a Remote Pilot Certificate program (Title 14 - Part 107), which is designed to establish an individual's understanding of the regulations, operating requirements, and procedures for safely flying drones. To obtain the Remote Pilot Certificate, the individual must pass an aeronautical knowledge test that covers, among other topics, airspace classification and operating requirements, and flight restrictions affecting small, unmanned aircraft operation. All individuals flying with the intention of being monetarily compensated are required to have a current Part 107 Certificate.

8. Title 49 ("Transportation"), United States Code, Section 44809(a)(7), exception for limited recreational operations of unmanned aircraft, requires the operator pass an aeronautical knowledge and safety test and maintain proof of test passage to be made available to the Administrator or law enforcement upon request. To satisfy this requirement, the FAA developed The Recreational UAS Safety Test (TRUST), which provides education and testing on important safety and regulatory information. Individuals flying a drone (UAS) recreationally under the exception for recreational flyers, must pass this test before flying.

9. Title 49 ("Transportation"), United States Code, Section 40103(b)(3) requires the Administrator of the FAA, in consultation with the Secretary of Defense, to establish areas in the airspace the Administrator decides are necessary in the interest of national defense; and by regulation or order, restrict or prohibit flight of civil aircraft that the Administrator cannot identify, locate, and control with available facilities in those areas. A TFR is a regulation that temporarily restricts certain aircraft from operating within a defined area in order to protect persons or property in the air or on the ground.

10. Pursuant to § 40103(b)(3), between June 9 and July 19, 2026, the FAA issued a TFR that prohibited all unmanned aircraft from operating within the defined geographical zone

within Houston, TX without prior approval from the FAA.[1]  Pursuant to § 40103(b)(3), the FAA classified the airspace within this TFR as "National Defense Airspace" in NOTAM (written notification) 6/6447; and is further defined under to Title 14,  Code of Federal Regulations (CFR) 99.7, Special Security Instructions (SSI), all UAS flight operations are prohibited within a one nautical mile (NM) radius of 29°45'08.0"N 95°21'08.0"W and 1,000 foot (FT) surface to above-ground-level (AGL). TFR NOTAM 6/6447 and other TFRs are published by the FAA and are publicly accessible via https://tfr.faa.gov prior to their respective start date.

11.    Title 49, United States Code, Section 46307 prohibits a person from knowingly or willfully violating 49 U.S.C. § 40103(b)(3), or a regulation prescribed or order issued under § 40103(b)(3).

### FACTS ESTABLISHING PROBABLE CAUSE

12.    On or about June 12, 2026, at approximately 2:23 p.m. Central Standard Time (CST), the FBI Houston Counter-UAS Task Force (CUTF) used UAS remote identification (RID) and radio frequency (RF) detection and mitigation equipment to locate a small UAS flying in the vicinity of 1200 Nagle Street, Houston, TX 77003. The Counter-UAS (C-UAS) equipment identified the RID assigned to the small UAS as 3NZCM16007054P (RID#054P) and the make/model as DJI Mavic Mini 2. The C-UAS equipment detected RID#054P was in flight for approximately for approximately four minutes and reached an estimated altitude of 94 FT AGL. At about 2:27 p.m. CST, a small UAS was observed flying in the vicinity of 1200 Nagle Street,

---

[1] This TFR, and other TFR's, were issued as part of a comprehensive security complement designed to protect and secure the events leading up to and including Houston, TX, hosting the 2026 FIFA World Cup. This particular TFR extended from approximately Gray Street on its southern border to the Buffalo Bayou on the northern border, with North Hutcheson Street on the eastern border and Travis Street on the western border. This TFR was in effect from June 9, 2026, to July 19, 2026.

Houston, TX 77003, an area within the boundaries of TFR-NOTAM 6/6447. As a result, law enforcement searched for, located, and observed the pilot operating the UAS. This individual was identified as Ricardo Rodriguez III (RODRIGUEZ) of Houston, Texas.

13.     RODRIGUEZ was interviewed by law enforcement. RODRIGUEZ admitted he piloted the small UAS, identified as a DJI Mavic Mini 2, bearing RID 3NZCM16007054P, which was observed violating the TFR. The purpose of RODRIGUEZ's small UAS flight was to conduct a roofing inspection of a residential property for his employer, Boss Hogg Roofing. RODRIGUEZ further admitted he did not possess a Remote Pilot Certificate (Title 14 Part 107), did not check for airspace restrictions, and did not obtain airspace authorization before flying the small UAS. RODRIGUEZ's small UAS was not registered with the FAA and did not have registration markings clearly visible on the small UAS itself. I further submit that this activity is inconsistent with the training associated with the FAA Remote Pilot Certificate program (Part 107) and/or TRUST Certificate program.

14.     Based on the observations of law enforcement and RODRIGUEZ's own admissions, it is clear that RODRIGUEZ flew the UAS in the TFR, with a flight path in the vicinity of 1200 Nagle Street, Houston, TX 77003, and that the flight lasted approximately four minutes operating within the TFR NOTAM 6/6447.

5

## CONCLUSION

15.    Based on the foregoing facts, I respectfully submit there is probable cause to believe RODRIGUEZ has violated Title 49, United States Code, Section 46307 by knowingly and willfully violating national defense airspace.

Respectfully Submitted,

Chauncy Bradley, Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically this 25th day of June, 2026 and I hereby find probable cause.

HONORABLE YVONNE Y. HO
United States Magistrate Judge

6